UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

CIVIL ACTION NO. 06-45-KKC

ERIC B. LONG,                                                                                  PLAINTIFF,

V.                            **MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,                                               DEFENDANT.

\* \* \* \* \* \* \*

INTRODUCTION

The Plaintiff, Eric B. Long [Long], filed an application for a period of disability insurance benefits [DIB] on January 28, 2004, alleging that he began to suffer from the effects of a disability on August 1, 2002. [Tr. 49.] His application for benefits was denied initially, and upon reconsideration. [Tr. 33-41.] Upon his request, a hearing was held before an administrative law judge [ALJ] where Long was represented by counsel and testified. The ALJ subsequently issued an unfavorable decision on November 18, 2005. [Tr. 18-27.] Further request for review by the Appeals Council was denied and the instant action followed.

This instant matter is one for judicial review of the decision denying Plaintiff's application for DIB. The matter is pending before the undersigned for issuance of a report and recommendation pursuant to Title 28 U.S.C. § 636(b)(1). [Record No. 10.] The parties having filed cross-motions for summary judgment, [Record Nos. 8, 9], the matter is now ripe for review.

---

[1] Michael J. Astrue was sworn in as Commissioner of Social Security on February 12, 2007, replacing Linda S. McMahon, who served as Acting Commissioner.

## FACTUAL BACKGROUND

At the time of the ALJ's decision below, Long was a 58-year-old gentleman with a college degree in political science. [Tr. 579-580.] His past experience included work as a Corrections Officer for a state penitentiary in Kentucky, with a last date of employment being August 1, 2002. [Tr. 22, 64, 86, 584.] In his application for DIB, Long alleges that he suffers from a disability as a result of diabetes mellitus, Type I.. [Tr. 22, 63.] At the hearing below, Long testified regarding his duties as a corrections officer:

> As a general rule it was to keep an eye on the inmate population and to report any abnormal behavior to the supervisors and also to maintain peace between those inmates. If one were to attack the other, we're to prevent them from being injured and of course to call for assistance. And you maintain first and foremost a control over the institution, which involved carrying keys, carrying radios, which none of which could go into the hands of the inmates at any time. In other words, to maintain the security of the institution.

[Tr. 584.] Subsequent to leaving work with the Kentucky Department of Corrections, Long took work in a steel mill, and described the work as follows: "The main thing there was to – there was a lot of heavy lifting involved and a lot of heat, and it was lifting using machinery to lift things, but the most important thing there was to be mentally and physically alert – and I could not do so." [TR. 586.] In addition, he attempted to work at Walmart, but was unable to do so. [Tr. 586.] Long alleges that his main physical problem is the occurrence of black out episodes secondary to fluctuations in his blood sugar. [Tr. 587.] The more active he is, the more difficult it becomes to control his blood sugar, [Tr. 588.] which in turn affects his ability to engage in frequent lifting. [Tr. 591, 592.]

Following Long's testimony at the hearing, the ALJ posed the following hypothetical question to Linda Sparrow, vocational expert [VE]:

> Let me give you the following hypothetical. The Claimant has the residual

2

> functional capacity to work at the medium exertional level occasionally lifting and carrying 50 pounds, frequently 25 pounds, sit, stand, and/or walk six hours in an eight-hour day. Because of marked fluctuations of his blood sugar he should be restricted to only occasional climbing of stairs or ramps, never ladder or rope, and he should avoid all hazards such as unprotected heights and dangerous machinery. He should not operate a commercial vehicle or operate moving equipment or machinery. Based on that hypothetical could he perform his past relevant work as a corrections officer?

[Tr. 601.] The VE testified that based on this hypothetical, Long retained the ability to engage in his past work as a corrections officer. [Tr. 601.] However, assuming that Long's testimony was totally and completely credible and all of the impairments he discussed applied, Long would not be able to function in his past relevant work. [Tr. 602.] Upon review of the record, the ALJ found that Long retained the ability to return to his past relevant work, and denied his claim for DIB. [Tr. 26.]

The Plaintiff now moves for summary judgment arguing that the ALJ's decision is not supported by substantial evidence as his hypothetical question to the vocational expert is inconsistent with his own finding with regard to the severity of the impairment, brittle Type I diabetes. [Record No. 8, p. 2.] As a result, Long seeks reversal of the Commissioner's decision and an award of benefits. [Record No. 8, p. 8.] In the alternative, Long seeks remand of the matter for further development of evidence regarding the nature of severe hypoglycemia. [Record No. 8, p. 9.]

The Defendant also moved for summary judgment arguing that the ALJ's decision is supported by substantial evidence. [Record No. 9.]

## LEGAL STANDARD

In determining whether a claimant is disabled, an ALJ undertakes a five-step sequential evaluation process pursuant to 20 C.F.R. §§ 404.1520, 416.920. This process was summarized by the Sixth Circuit Court of Appeals in Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 474 (6th Cir. 2003):

3

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

336 F.3d at 474 (internal citations omitted).

At the first step of the sequential evaluation process the ALJ considers whether a claimant has engaged in substantial gainful activity since the date of his application. At step two, the ALJ must determine whether the claimant suffers from medically determinable impairments that are severe within the meaning of the Regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. At step 3, an ALJ must find whether any medically determinable impairments meet or medically equal an impairment in the Listings. see generally 20 C.F.R. pt. 404, subpt. P, app. 1. At the fourth step, the ALJ must consider whether, in light of his residual functional capacity, the Plaintiff retains the ability to perform past relevant work. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). At the fifth and final step, relying on the testimony of the VE and taking into consideration Plaintiff's age, educational background, past relevant work experience, and residual functional capacity (hereinafter "RFC"), the ALJ must determine whether the Plaintiff is capable of making a successful adjustment to work existing in significant numbers in the national economy.

Judicial review of a decision by an ALJ is limited to determining whether the decision is supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); Wyatt v. Secretary of Health and Human Services, 974 F.2d 680, 683 (6th Cir. 1992); Abbott v. Sullivan, 905 F.2d 918, 922 (6th Cir. 1990); see also Jones v. Sec'y of Health & Human

Servs., 945 F.2d 1365, 1368-1369 (6th Cir. 1991). Substantial evidence is "such evidence as a reasonable mind shall accept as adequate to support a conclusion." It is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984).

Furthermore, the Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir.1993); see also Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389-90 (6th Cir. 1999).

The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm. Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, "[t]he court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1228 (6th Cir. 1988) (citing Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987)).

## ANALYSIS

In regard to Long's claim, the ALJ applied the five-step sequential evaluation process and found that Long had not engaged in substantial gainful activity since the alleged onset of disability. [Tr. 26.] At the second step, the ALJ found that his medically determinable impairment was severe

within the meaning of the Regulations. See 20 C.F.R. §§ 404.1520(c), 404.1521, 416.920(c), 416.921. The relevant impairment was claimant's insulin dependent diabetes fluctuations in blood glucose with unpredictable episodes of severe hypoglycemia. [Tr. 26.] At step three the ALJ found Plaintiff's medically determinable impairment did not meet or medically equal an impairment in the Listings. See generally 20 C.F.R. pt. 404, subpt. P, app. 1. [Tr. 26.] At the fourth step, the ALJ found that, considering his residual functional capacity, Long was able to perform his past relevant work, and on this basis denied his application for benefits. See 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). [Tr. 26.] In denying the application for benefits, the ALJ made the following finding regarding Long's residual functional capacity:

> . . . the claimant retains the residual functional capacity to perform work at the medium exertional level. He can occasionally lift/carry 50 pounds and frequently lift/carry 25 pounds. He can sit, stand and/or walk 6 hours in an 8-hour workday. However, because of marked fluctuations of blood glucose, he should be restricted to only occasional climbing of stairs/ramps, never climb ladders, ropes or scaffolds; and he should avoid all hazards such as unprotected heights and dangerous machinery and he should not operate a commercial vehicle or operate moving equipment or machinery.

[Tr. 25.]

In support of his motion for summary judgment, Long asserts two grounds for reversal: (1) that the ALJ's opinion is not supported by substantial evidence as the hypothetical is inconsistent with the ALJ's findings with regard to the severity of Long's impairment; and (2) that the ALJ failed to accurately evaluate the residual functional capacity from two treating physicians, and failed to consider the limitations of a third treating physician.

First, Long contends that the ALJ concluded this hypoglycemia constituted a severe impairment, and stated:

> The medical evidence indicates that the claimant has insulin dependent diabetes

>fluctuations in blood glucose with unpredictable episodes of severe hypoglycemia, an impairment that is "severe" within the meaning of the Regulations. . .

[Tr. 24.]

Long argues that the ALJ failed to include in his hypothetical to the VE the fact that Long had unpredictable severe hypoglycemia. However, it is not necessary that a hypothetical to a VE contain reference to a claimant's medical conditions, but should describe a claimant's limitations. Foster v. Halter, 279 F.3d 348, 356 (6th Cir.2001); see also Varley v. Sec'y of Health and Human Servs., 820 F.2d 777, 780 (6th Cir. 1987). As the hypothetical at issue contained a full account of functional limitations in this matter, it was not necessary for the ALJ to include reference to Long's condition of unpredictable severe hypoglycemia. Therefore, Long's claim of error for failure to reference unpredictable severe hypoglycemia in the hypothetical fails.

The second claim of error alleged by Long is that the ALJ failed to accurately evaluate the FCE of two treating physicians, and failed to consider the limitations of a third treating physician. Specifically, Long argues that the ALJ rejected opinions of two treating physicians, and failed to comment on the third, a Dr. Paul S. Reeder, who was treating Long in 1985. Generally, the Secretary is not bound by the treating physician's opinions, and such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence. Combs v. Commissioner of Social Security, 459 F.3d 640, 652 (6th Cir.2006)(citing Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir.1993)). Combs was a decision in which a treating physician's opinion regarding the claimant's residual functional capacity was discounted as it was not supported by objective medical data. Thus, in the instant matter, the question is whether the ALJ properly discounted the opinions of the treating physicians in formulating the residual functional capacity. For the reasons stated below, the undersigned believes that the ALJ did not err in

formulating Long's residual functional capacity.

The ALJ addressed the residual functional capacity of one treating physician, Dr. Parandhamulu Saranga, M.D., dated August 9, 2004, and rejected it as it is confusing and lacking specificity. [Tr. 23.]   Dr. Saranga recommended various restrictions for Long on the basis of "history of low blood sugar on exertion."  However, the residual functional capacity is noticeably absent of any exam findings, laboratory test results or other objective evidence supporting the opinions stated. [Tr. 222-224.]   In addition, the ALJ summarily rejected the medical assessment of claimant's ability to work rendered by Dr. Kerrithi Kemperajurs, M.D., dated June 25, 2004, finding that it was inconsistent with the other medical evidence of record and not supported by Long's activities of daily living, which, the ALJ found, indicated an ability to engage in activities beyond a sedentary exertional level. [Tr. 23-24, 530-532.] Clearly, Dr. Kemperajurs' Medical Assessment of June 25, 2004 lacks any supporting basis for his opinions beyond a history of Long's condition. Finally, Long contends that the ALJ omitted evaluating the limitations listed by Dr. Paul Reeder. However, Long does not show that he treated with Dr. Reeder at any time after November 8, 1985, the date of the report Long argues should have been considered by the ALJ. [Tr. 534.] Absent evidence that Long treated with Dr. Reeder sometime within the nineteen years prior to his application for disability, the undersigned cannot find that the ALJ erred by relying on other, more recent treatment and considering the evidence of Long's activity level.

In reaching a decision in the instant matter, the decision of the ALJ is supported by the opinions of two state agency physicians who found that Long had no exertional limitations. [Tr. 25, 213.] This is not unreasonable considering Long's own testimony that he was able to care for his own personal needs, cook, eat out, shop, run errands, drive, engage in carpentry and electrical work,

and on one occasion lift a 200-pound anvil. [Tr. 226, 594-596.] The ALJ's decision is therefore based upon substantial evidence in the record, as it is grounded upon medical opinions that are supported by clinical findings which are consistent with Long's self-reported account of his activities. See Combs, 459 F.3d at 652. Therefore, the ALJ did not err in choosing to rely on testimony other than treating physicians in formulating a residual functional capacity.

## CONCLUSION

Therefore, for the reasons set forth above, it is recommended that Defendant Commissioner's motion for summary judgment [Record No. 9] be granted; Plaintiff's motion for summary judgment [Record No. 8] be denied; Judgment be entered affirming the Commissioner's final decision and dismissing this action with prejudice; and, that this action be stricken from the Court's docket.

Specific objections to this Report and Recommendation must be filed within ten days from the date of service thereof or further appeal is waived. United States v. Campbell, 261 F.3d 628, 632 (6th Cir. 2001); Bituminous Cas. Corp. v. Combs Contracting Inc., 236 F. Supp. 2d 737, 749-750 (E.D. Ky. 2002). General objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004); Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within ten days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

Signed March 20, 2007.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge